## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

MELVIN MCCOLLUM,

        Plaintiff,

v.                                                                  Case No. 10-11471

LIFE INSURANCE COMPANY OF NORTH
AMERICA, et al.,

        Defendants.

_____/

**OPINION AND ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S
MOTION FOR JUDGMENT**

On April 13, 2010, Plaintiff Melvin McCollum brought the above-captioned case

against Defendant Life Insurance Company of North America ("LINA"), seeking reversal

of a denial of benefits under ERISA.  Defendants Fabristeel Products, Inc., and

Doncaster Group, Limited, were later added by stipulation.  On March 29, 2011, Plaintiff

filed a motion for judgment.  At the direction of the court, Defendants filed a joint

response and motion for judgment on April 12, 2011.  Plaintiff responded on April 18,

2011, and Defendants replied on May 3, 2011.  Having reviewed the briefs, the court

determines that a hearing on the motions is unnecessary.  E.D. Mich. LR 7.1(f)(2).  The

court will grant in part and deny in part Plaintiff's motion for judgment and will grant in

part and deny in part Defendants' motion for judgment.

## I. BACKGROUND

Until July 1996, Plaintiff was employed by Fabristeel Products, Inc., as a cold

header operator.  In the course of his employment, Plaintiff suffered a severe injury to

his right shoulder when a container handle broke while he was lifting it.  (JA 259.)

Plaintiff underwent arthroscopy on November 14, 1996, for a torn rotator cuff.  (JA 252.)
Physical therapy was completed in May 1997, with some improvement, but spinal
stenosis (narrowing) was noted at that time.  (JA 73-74.)  On July 28, 1997, Plaintiff was
examined by Dr. Stephen Boodin, who opined that he had "significant degenerative
changes in the lumbar spine" and that "surgical decompression [was] likely his only
rational option."  (JA 217.)  Plaintiff eventually underwent a laminectomy on July 6,
2005.  As a result of the shoulder injury and spinal stenosis, Plaintiff suffered substantial
and chronic pain.  Various attempts were made to alleviate the pain without notable
success.

LINA initially provided Plaintiff various disability benefits, including long-term
disability ("LTD") benefits under a group LTD policy and a waiver of premium ("WOP")
benefits under a group life insurance policy.  In August 2006, LINA conducted a review
of Plaintiff's WOP benefits, during which it requested verification of Plaintiff's continuing
disability.  (JA 351.)  As part of this review, Dr. Adam Kellman completed an evaluation
form on September 15, 2006.  (JA 119-20.)  The form indicates an ability to "frequently"
sit, "occasionally" stand and walk, "occasionally" lift and carry items up to twenty
pounds, and "continuously" manipulate items.  (JA 119.)  Occasional pushing and
pulling of up to fifteen pounds, as well as frequent balancing is also indicated.  (JA 120.)
However, Kellman revised this assessment following LINA's determination that Plaintiff
was able to perform light work.  On November 8, 2006, Kellman completed another
evaluation of Plaintiff that reduced his ability to sit downward to "occasionally," his ability
to engage in fine manipulation of items to"occasionally" and with only his right hand, and
reduced his assessed ability to "occasionally" lift items down to ten pounds, with no

2

carrying.  (JA 68.)  Pushing and pulling were limited, even within the occasional

category, and Plaintiff's ability to work around machinery or use foot controls was

completely rejected.  (JA 69.)  Kellman also offered an opinion that Plaintiff was

"medically totally disabled."  (JA 67.)

On July 10, 2007, rehabilitation specialist Dr. Eric Kovan completed an

assessment form regarding Plaintiff.  He found Plaintiff could "occasionally" sit, stand,

walk, reach, lift and carry up to twenty pounds, push or pull up to ten pounds, and

balance.  (JA 108-109.)  Kovan further found that Plaintiff could grasp and manipulate

items "continuously."  (JA 108.)  Following implantation of a spinal cord stimulator and

recooperation, Kovan observed Plaintiff as having "really minimal improvement" and "no

relief" on May 13, 2008.  (JA 66.)  Kovan also offered the opinion that Plaintiff was

"unable to work at this time or in the near future."  (JA 66.)

LINA obtained a review of Plaintiff's medical records by independent medical

reviewer Dr. Harvey Popovich.  On April 22, 2007, Popovich assessed Plaintiff's status

based upon the records of treating physicians, "accept[ing] the medical findings

described."  (JA 110.)  The report included a concise statement of Plaintiff's medical

history, including his injury, surgeries, degenerative spinal stenosis, left hand trigger

finger, diabetes, hypertension, limited flexion, and chronic pain.  (JA 111-13.)  Popovich

also considered Kellman's opinions of total disability and inability to perform any work.

(JA 114.)  Crediting Plaintiff's reports of chronic pain related to his back condition,

Popovich nonetheless concluded that the medical record indicated an ability to work in

some light duty occupations.  (JA 114.)

Considering all foregoing assessments, LINA determined that Plaintiff was

capable of performing the necessary tasks of two occupations.  (JA 52, 62, 116, 346.)
Based upon Kellman's first assessment in 2006, it informed Plaintiff by letter dated
September 22, 2006, that it was denying Plaintiff continued WOP benefits.  (JA 344-48.)
On January 22, 2008, LINA likewise denied Plaintiff continued LTD benefits.  (JA 52-
56.)  Plaintiff appealed this decision, and LINA affirmed its denial on May 5, 2008, and
again on November 4, 2008.  (JA 60, 62.)  The final denial found Plaintiff capable of
working as an auto casting machine operator or a multi-operation machine operator.
(JA 62.)

Plaintiff filed the instant case on April 13, 2010, against Defendants.  In addition
to challenging the denial of WOP and LTD benefits, Plaintiff seeks statutory damages
for failure to provide a summary plan description ("SPD").  Apart from the identity of the
plan administrator, the material facts are undisputed.  Prior to 1996, LINA issued two
employee benefit policies to Fabristeel Products, Inc., which provided for LTD and WOP
benefits to disabled participating employees.  (JA 21-47, 311-41.)  Plaintiff was a
participant in both plans, and both remained in effect at the time of his injury.  LINA is
the claim administrator for the plan.

Although the parties disagree on the identity of the plan administrator at present,
they agree that Fabristeel was both employer and plan administrator when Plaintiff was
injured.  In 1996, Fabristeel was wholly owned by FastenTech, Inc., which was wholly
owned by FasTech, Inc.  In 2004, the assets of Fabristeel were sold to Whitesell
International Corporation.[1]  In 2007, Dundee Holdings, Inc., acquired ownership of all

[1]  Plaintiff originally brought this action against LINA and Whitesell, but the
parties stipulated to the dismissal of Whitesell on March 9, 2011.

4

shares of FasTech.  Doncasters Group Limited, a U.K. company, owns Dundee Holdings.

On July 30, 2009, and again on September 1, 2009, Plaintiff sent written requests to LINA for the SPD covering his LTD benefits claims.  (2d. Amend. Compl. Ex. 4 & 5.)  On December 7, 2009, and again on January 19, 2010, Plaintiff sent written requests for "all applicable summary plan descriptions" addressed to Fabristeel and Whitesell at Whitesell's office in Troy, Michigan.  (2d. Amend. Compl. Ex. 2 & 3.) Whitesell and Doncasters conducted a search for the SPD but could not locate it.  No SPD has been provided to Plaintiff in response to these requests, and it is uncertain whether any SPD was ever drafted.  The court held a hearing on Plaintiff's procedural challenge and request for discovery on November 23, 2010, at which point Defendants admitted failure to produce the SPD and claimed inability to locate any relevant SPD. The court ordered limited discovery regarding the unavailability of the SPD.  (12/3/2011 Order.)  Nothing in the record indicates any further progress has been made in either locating the SPD or determining the cause of its absence.  Plaintiff seeks imposition of a civil penalty against the plan administrator for failure to provide an SPD upon request.

## II.  STANDARD

In *Wilkins v. Baptist Healthcare Sytem., Inc.*, 150 F.3d 609 (6th Cir. 1998), the Sixth Circuit set forth "Suggested Guidelines" to adjudicate claims based on improper denials of ERISA benefits.  A district court's review of a plan administer's determination should normally be confined to the evidence that was in the record before the plan administrator.  *Id.* at 618 (citing *Rowan v. Unum Life Ins. Co.*, 119 F.3d 433, 437 (6th Cir. 1997)); *Barone v. Unum Life Ins. Co. of Am.*, 186 F. Supp. 2d 777, 779 (E.D. Mich.

5

2002).  The "Suggested Guidelines" in *Wilkins* direct the district court to review a plan administrator's decision based solely on the administrative record and render findings of fact and conclusions of law.  *Wilkins*, 150 F.3d at 618; *Barone*,186 F. Supp. 2d at 779.

The district court reviews a denial of benefits challenged under 29 U.S.C. § 1132(a)(1)(B) *de novo* "unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989); *Marks*, 342 F.3d at 456.  "If a plan affords such discretion to an administrator or fiduciary, we review the denial of benefits only to determine if it was 'arbitrary and capricious.'" *Marks*, 342 F.3d at 456 (citing *Miller v. Metro. Life Ins. Co.*, 925 F.2d 979, 983 (6th Cir. 1991)).  In this case, the court has already concluded that it will review the administrator's decision *de novo.*  (*See* 12/3/2010 Order at 4.)

## II.  DISCUSSION

### A.  Denial of LTD Benefits

The primary basis of Plaintiff's complaint lies in the denial of benefits in 2006 and 2008.  The court has reviewed the administrative record and finds that LINA properly denied benefits to Plaintiff.  Although Plaintiff separately asserts improper denial of WOP benefits in 2006 and improper denial of LTD benefits in 2008, the court addresses both together as the issues substantially overlap.  Plaintiff may be significantly limited in his capacity to work, but he is not so disabled as to be unable to engage in any gainful employment.  He remains capable of successfully performing all material tasks of some occupations, and, therefore, cannot obtain WOP and LTD benefits.

6

The LTD policy provides for benefits in the case of disability.  In relevant part, the policy defines "disability" as being "unable to perform all the material duties of any occupation for which he is or may reasonably become qualified based on his education, training, or experience" due to injury.  (JA 25.)  Plaintiff is required to provide proof of continued disability upon request.  (JA 44.)  It is undisputed that Plaintiff suffered an injury and was unable to perform the material duties of his prior occupation.  The parties disagree only as to whether Plaintiff was "disabled" as defined in the policy, which requires Plaintiff be so injured as to prevent his employment in *any* suitable occupation. The WOP benefit similarly provides continuation of life insurance coverage without requiring premium payments for covered employees who become "disabled."  "A covered employee will be deemed 'disabled,' as used here, only if he can not do any work for wage or profit."  (JA 335.)  Plaintiff is responsible for providing proof of disability and proof of continued disability on an annual basis.  (JA 335.)  Again, the parties dispute only whether Plaintiff could do *any* work.  Therefore, the issue before the court is simply whether Plaintiff's medical disability was so severe that it prevented him from engaging in any gainful employment.

As an initial matter, Plaintiff contends that the opinions of his treating physicians should be afforded unique weight and deference because they are best positioned to observe Plaintiff's condition.  (Pl. Resp. at 5.)  In support of this proposition, Plaintiff relies on the "treating physician rule" applied to ERISA cases in the Sixth Circuit by *Darland v. Fortis Benefits Co.*, 317 F.3d 516, 533 (6th Cir. 2003).  However, this holding of *Darland* has been abrogated by the Supreme Court in *Black & Decker Disability Plan v. Nord*, 538 U.S. 822 (2003).  "Thus, the 'treating physician rule' followed in *Darland* no

7

longer applies in the ERISA context." *Calvert v. Firstar Finance, Inc.*, 409 F.3d 286, 293 (6th Cir. 2005). Nor is there any logical reason to give the opinions of treating physicians undue weight where, as in the instant case, the court will review the determination of disability *de novo*. The proper role of physicians is to determine a participant's condition, not to render an authoritative decision on a legal issue for which their medical training and experience impart no particular expertise, *viz.* whether the participant is "disabled" in a legally relevant sense. A mechanic may opine on the extent of damage to a vehicle, but he cannot conclusively determine whether it is a total loss for purposes of an insurance policy. That physicians may be more accustomed to blind deference than are mechanics in no way alters the analysis. An unsupported opinion by a treating physician as to a legal conclusion deserves no more weight than a similarly unsupported opinion by a reviewing physician. *See Black & Decker Disability Plan* 538 U.S. at 834 ("[C]ourts have no warrant to require administrators automatically to accord special weight to the opinions of a claimant's physician . . . ."). The court reviewing a determination *de novo* is obligated to conduct its own evaluation, not merely permitted to do so.

Viewing the record as a whole, Plaintiff failed to present sufficient evidence of continued disability. Defendants have presented evidence that two positions were available at various times that would have met Plaintiff's physical restrictions and his wage requirements . (JA 52, 62, 116, 346.) This assessment was made according to a transferable skills analysis by LINA and based upon occupational requirement descriptions contained in the Dictionary of Occupational Titles, previously produced by the U.S. Department of Labor. (JA 346.) Plaintiff has not challenged the validity of this

8

determination, except insofar as it presumes Plaintiff capable of the physical requirements of the positions.  Even if the Plaintiff had challenged the determination, the Sixth Circuit has held that reliance on the Dictionary of Occupational Titles to identify occupations and an occupation's physical requirements is reasonable.  *See Osborne v. Hartford Life & Accident Ins. Co.*, 465 F.3d 296, 299 (6th Cir. 2006) ("[Defendant's use of the Dictionary [of Occupational Titles] to determine [plaintiff's] 'own occupation' was not arbitrary and capricious, but on the contrary was 'reasonable.'").

Presented with a relatively narrow range of disagreement among the three assessments produced by Kellman and Kovan, LINA properly found that Plaintiff is not prevented from all gainful employment.  Even taking Kellman's second assessment as the most accurate statement of Plaintiff's abilities, Plaintiff is capable of sitting, standing, and walking, doing each for up to one third of a normal workday.  (JA 68.)  He is likewise capable of a similar degree of use of his right hand for fine manipulation, and he can use both hands to that degree for simple grasping.  (JA 68.)  Lifting up to ten pounds of weight and limited occasional pushing and pulling are also within his abilities. (JA 68-69.)  No relevant sensory limitations are indicated.  Even making reasonable adjustment to account for the effect of his chronic pain and medication, the record nonetheless indicates that Plaintiff is not totally disabled.  He undoubtedly suffers severe limitations, but they do not rise to such high level as to preclude all types of work for which he is suited.

Plaintiff's award of disability benefits under the Social Security program does not require a different result.  The Supreme Court has recognized the material distinctions between the Social Security program and employee benefit plans provided by private

9

entities under ERISA. *Black & Decker Disability Plan*, 538 U.S. at 832-33 (noting the "prime importance" of the "critical differences between the Social Security disability program and ERISA benefit plans"). Additionally, Social Security disability determinations defer to the opinions of treating physicians, which creates a rebuttable presumption that such opinions are correct. *See id.* This approach was taken for administrative efficiency and is inapplicable to ERISA plan determinations. *Id.* at 833. The opinions of the treating physicians are duly noted but not accepted in light of their medical assessments. Therefore, Plaintiff's Social Security disability status determination is considered only as one among many factors in assessing the instant matter. *See Calvert*, 409 F.3d at 294. Ultimately, it is unpersuasive. Therefore, the court finds that LINA properly denied WOP and LTD benefits to Plaintiff because he is not "disabled" within the terms of the policies.

## B. Summary Plan Description

Plaintiff also seeks a civil penalty for Defendants' failure to provide the applicable SPD upon written request. ERISA provides for the imposition of civil penalties on plan administrators for failure or refusal to provide required information within thirty days of a written request. 29 U.S.C. § 1132(c)(1). A plan administrator is not liable for such penalties, however, where "such failure or refusal results from matters reasonably beyond the control of the administrator." 29 U.S.C. § 1132(c)(1). "It is well established that only plan administrators are liable for statutory penalties under § 1132(c)." *Caffey v. Unum Life Ins. Co.*, 302 F.3d 576, 584 (6th Cir. 2002) (citations omitted). The plan administrator is defined as "the person specifically so designated by the terms of the instrument under which the plan is operated" or the "plan sponsor"-typically the

employer.  29 U.S.C. § 1002(16).  The parties agree that Fabristeel was Plaintiff's

employer, and the court finds that it was also the plan sponsor of the single employer

plan.  29 U.S.C. § 1002(16)(B)(i).  Although ownership of Fabristeel has changed hands

multiple times since the plan was established, it remains a corporate entity distinct from

the other Defendants.  As Plaintiff himself notes, a "corporation survives as an entity

separate and distinct from its shareholders even if all the stock is purchased by another

corporation."  *Smith Land & Improvement Corp. v. Celotex Corp.*, 851 F.2d 86, 91 (6th

Cir. 1988).  Doncasters may be the beneficial owner of Fabristeel, but it is clearly not its

successor.  Therefore, Fabristeel alone is the plan administrator.

Next, the court must address the issue of Fabristeel's liability.  Plaintiff first sent a

written request for any applicable SPD to Fabristeel and Whitesell on December 7,

2009.  Defendants have admitted failure to provide the summary plan description

requested by Plaintiff.  At a hearing before this court held on November 23, 2010,

Defendants admitted inability to locate the SPD and provide a copy to Plaintiff.

Defendants also acknowledged that Fabristeel was the plan administrator at the time of

Plaintiff's injury, that Doncasters controlled ownership of all shares of Fabristeel stock,

and that the court would be required to undertake a de novo review of LINA's denial of

benefits.  Therefore, the period potentially to be used in assessing a civil penalty runs

from thirty days after Plaintiff's written request until Plaintiff had all relevant information:

317 days between January 7, 2010, and November 23, 2010.

As Fabristeel admits failure to provide the SPD, its only defense against civil

penalties is its alleged inability "result[ing] from matters reasonably beyond [its] control."

29 U.S.C. § 1132(c)(1).  Defendants argue that the changes of corporate ownership

11

resulted in either the loss of the SPD or the inability to locate anyone who would be able to definitively state whether an original SPD had ever been drafted. Relying upon this, they argue that these are matters beyond their control and should excuse the failure to provide the SPD upon request. Defendants cite *Jackson v. E.J. Brach Corp.*, 937 F. Supp. 735 (N.D. Ill. 1996), in support of their contention. However, Plaintiff correctly notes that the Jackson court determined only that no civil liability attaches for failure to provide an outdated SPD. Id. at 740. Where a plan administrator cannot locate the applicable SPD at all, it is given thirty days to create one without penalty. Such was not done in this case. The court may therefore exercise its discretion to impose a civil penalty up to $110 per day. 29 U.S.C. § 1132(c)(1); 29 C.F.R. § 2575.502c-1. In deciding whether to impose a civil penalty, courts may consider the absence of prejudice or bad faith. *Bartling v. Fruehauf Corp.*, 29 F.3d 1062, 1068 (6th Cir. 1994). No prejudice or bad faith has been shown in the instant case. Plaintiff readily identified the relevant parties, necessary substitution of Defendants was made by stipulation, and Defendants have admitted that *de novo* review applies. Apart from some minor delays and additional effort in determining the identity of the plan administrator and the nonexistence of the SPD, Plaintiff has not been prejudiced in any manner. Certainly, no legal rights of Plaintiff have been impinged. Therefore, the court finds that a nominal civil penalty in the amount of five dollars per day for each of the 317 days Defendant Fabristeel failed to provide Plaintiff with the SPD should be imposed.

### III.  CONCLUSION

IT IS ORDERED that Plaintiff's motion for judgment [Dkt. # 31] is GRANTED IN PART and DENIED IN PART.  IT IS GRANTED with respect to Defendant's failure to

provide an SPD, for which Plaintiff will be awarded a penalty in the amount of $1,585.
IT IS DENIED with respect to Plaintiff's claim for benefits.

IT IS FURTHER ORDERED that Defendants' motion for judgment [Dkt. # 33] is
GRANTED IN PART with respect to Plaintiff's claim for benefits and DENIED IN PART
in that a civil penalty of $1,585 will be imposed upon Defendant Fabristeel pursuant to
29 U.S.C. § 1132(c)(1), payable forthwith.


   s/Robert H. Cleland                      
ROBERT H. CLELAND
UNITED STATES DISTRICT JUDGE


Dated:  September 8, 2011


I hereby certify that a copy of the foregoing document was mailed to counsel of record
on this date, September 8, 2011, by electronic and/or ordinary mail.

   s/Lisa Wagner                           
Case Manager and Deputy Clerk
(313) 234-5522